HENZE v. SAUNDERS.

1. VENDOR AND PURCHASER—LAND CONTRACT—FRAUD—EVIDENCE—
SUFFICIENCY.

> In a suit by a husband and wife, vendors, to rescind a
> contract for the sale of a duplex house, on the ground
> that plaintiff's consent to the transfer of vendee's interest
> therein was procured by the fraudulent representation
> that said assignee was not a colored person, evidence
> *held*, insufficient to establish the fraud.

2. SAME—HUSBAND AND WIFE—ASSIGNMENT OF VENDEE'S INTEREST
—CONSENT OF WIFE NOT NECESSARY WHERE HUSBAND IS MAN-
AGER.

> Where the consent to the transfer was signed by the
> husband alone, although the title was held by the en-
> tireties, the wife's contention that the transfer was void
> because not signed by her cannot be sustained in view
> of evidence that the husband managed the real estate.

Appeal from Wayne; Sample (George W.), J., pre-
siding. Submitted June 17, 1921. (Docket No. 79.)
Decided October 3, 1921.

Bill by Joseph J. Henze and others against Nelson
M. Saunders and another to rescind a land contract on
the ground of fraud. From a decree dismissing the
bill, plaintiffs appeal. Affirmed.

*Monaghan, Crowley, Reilley & Kellogg*, for plain-
tiffs.

*Barnes & Stowers*, for defendants.

WIEST, J. The plaintiffs, Joseph J. Henze and
Laura M. Henze, purchased certain property in the
city of Detroit and erected thereon high-grade brick

veneer duplex houses for the purpose of sale. October 16, 1916, they sold one of the houses to Mary Beechie, on land contract, for the sum of $9,650, and received a $2,000 payment. The land contract contained the usual provision against the vendee selling or assigning her interest without the written consent of the vendors. Mary Beechie, wanting to sell her contract interest, listed the same with a real estate agent, and the Henzes consented with the qualification that the transfer should not be to Jewish or colored persons. A purchaser was found in the person of defendant Nelson M. Saunders, and on July 8, 1919, an agreement was entered into between Mary Beechie and Mr. Saunders for the sale of her interest to Mr. Saunders, with a payment at that time of $50 and $5,000 on delivery to him of the contract, and $900 when the abstract was approved, and the balance to be paid as per terms of the contract. The $50 was paid and on July 30, 1919, Mr. Saunders paid $5,000 and was given a receipt, and upon this receipt Mr. Henze wrote his consent to the transfer.

The bill herein was filed to have the sale and the consent thereto rescinded on the ground of fraud; it being alleged that Mr. Saunders was informed that the Henzes would not consent to sell to a colored person or to a Jew, and falsely and fraudulently represented that he was not a colored person and was white and an Irish-Canadian. Defendants denied that any such representation was made and claimed that Mr. Saunders was asked if he was an American citizen and was not informed that the Henzes would not consent to a sale to a colored person. The learned circuit judge at the close of the evidence found that the alleged fraudulent representation had not been established and dismissed the bill.

An examination of the record brings us to agreement with the trial judge. In order to grant relief

to plaintiffs it was necessary to find that there was an agreement between the Henzes and Mary Beechie that she should not sell or assign her contract interest to a colored person and that Mr. Saunders was informed of the fact that the Henzes would not consent to any sale or transfer by Mary Beechie to a colored person, and to obtain such consent Mr. Saunders falsely represented that he was not a colored person and the Henzes relied upon such representation.

When Mr. Henze met Mr. Saunders during the negotiations for the sale he was suspicious from his actions that he was a Jew, and called Mr. Murphy, the real estate broker handling the matter for Mary Beechie, to one side and informed him of his suspicion and said:

"You know I cannot and I won't sell, neither will the Cook Farm Company let me sell only to clean, white Americans. It looks to me as though he was a Jew."

The question came up whether Mr. Murphy should ask Mr. Saunders about the matter and Mr. Henze said:

"Yes, I want to know; let me know."

Mr. Henze saw Mr. Saunders three times during the negotiations and believed him a white person, but thought he had Jewish blood. He testified:

"I didn't tell Mr. Murphy to ask him if he had Jewish blood, not that question only. I did suggest to Mr. Murphy that I thought he had Jewish blood in him. That is not the question I thought Mr. Murphy was going to ask him. I didn't suggest that question only to Mr. Murphy. I suggested to Mr. Murphy that he was to get full information, who he was and where he came from. From this information I wanted to find out about Saunders, who he was, where he came from and where he lived, and all I found out was that he was an Irish-Canadian. That was satisfactory to

me.   When I heard that I knew I could not say any-
thing else.   Mr. Murphy left this word at my house."

Mr. Henze also testified:

"I took him for an Irish-Canadian because it was
told to me he said he was.   I was deceived from my
observation of Saunders.   I became undeceived when
I got the warning he might be colored.   Then of course
I opened my eyes."

Mr. Murphy testified:

"Mrs. Beechie called Mr. Henze over to see that
everything would be all right; if he was satisfied with
selling to Mr. Saunders and Mr. Henze called me out
when he started home,—called me out in the vestibule
and said—'Now are these people Jewish?   I cannot
sell to anybody that are Jewish or colored people.'   I
couldn't say as to whether this contract was signed
at that time or not.   I think not.   We went back in
the house and there was something said in regard to
nationality.   What it was I cannot recall.   It was
said between us there.   I could not say by whom.
I don't recall much of that, I not being so much in-
terested.   If I had known this was coming up, I would
have known.   There was something said there about
the race but I cannot recall what it was.

"After that we started to take Mr. Saunders and his
wife home.   That was on the Boulevard near Jef-
ferson avenue.   I said 'Now, Mr. Henze called me out
there and said under the contract he cannot sell to
Jewish or colored people or anybody that would de-
preciate the value of the property.'   Mr. Saunders
said, 'You need not worry about that because we are
Irish-Canadians.'   Then, of course, we went on talk-
ing.   When that conversation took place on the Boule-
vard, I am sure I mentioned colored.   I did not tell
them that if Henze or if Mrs. Beechie asked them
if they were colored or Jewish to tell them they were
Irish-Canadians.

"When I saw him (Saunders), I took him for a white
man and never questioned it in my own mind.   Mr.
Henze suggested to me that Saunders was a Jew and
told me to ask him if he was a Jew.

"I said, 'Mr. Henze is under contract not to sell to

Jewish or colored or any people that would depreciate the value of the property.' He said, 'Don't worry about that, I am Irish-Canadian.' I believed him a white man. I didn't suggest to him that he was a colored man. I told him the instructions I was to sell the property under. I didn't believe that he was colored at that time. I didn't tell him he was a colored man. Mr. Henze called me to the door and asked if he was Jewish. I said 'I think not; I will find out.' "

Mr. Gilbert, who worked with Mr. Murphy, testified:

"There was a discussion between Mr. Murphy and the Saunders on the way down to Jefferson and the Boulevard. Mr. Murphy said the reason why he asked so many questions regarding his nationality or race that Mr. Henze was under contract when he bought that block of land to sell to nothing but good white people.

"I think—I don't know—Mr. Saunders—that his mother was born in Canada. It was discussed. He said he was—I don't know how it came out—he was an Irish-Canadian. Mr. Murphy didn't tell Saunders to tell Henze he was an Irish-Canadian. What he did say was, after the discussion was ended, the discussion about the people themselves was ended by saying, 'You tell Henze you are Japanese or Chinese or something of that kind.' I know we laughed about that and there was nothing more said.

"I saw Saunders half a dozen times and saw his wife twice. I thought them white. I didn't hear Mr. Henze make any remark to Mr. Murphy inquiring about the Saunders. I don't know what Mr. Henze was inquiring about. I was up to Saunders' office I think the next day, up to the Fyfe building. He gave me $50 more. I don't know whether it was the next day or the second day. I took that over to Mrs. Beechie and got a receipt for it. Then I went over to Mr. Henze's place and his wife was there; and I told her to tell Mr. Henze that we have gone through the question what kind of people Saunders was and we were satisfied they were good people. I made that report to Mrs. Henze and asked her to tell her husband. Mr. Saunders said in the automobile

his mother was born in Canada. I don't remember his saying that his mother was of Irish descent but he said she was born in Canada. In this automobile conversation Mr. Murphy said to Mr. Saunders 'The thing that Henze is bothered about, he imagines you are a Jew.' He asked whether Saunders was Jewish or colored. I couldn't say that was the only question asked. It was all put together. I don't remember Saunders' answer, 'Not a drop.' I think Mr. Murphy told him, or said to him, 'if he asks you anything, tell him you are a Canadian or a Chinese or a Japanese or anything;' then the question was dropped. The last thing said regarding the race or nationality, what kind of people they were was that he should tell him he was a Jap or something of that kind. That was a joke. It was supposed to be a joke; we laughed about it anyway."

Mary Beechie testified:

"When I bought from Mr. Henze he told me if I ever intended to sell, that I could not sell to undesirables or to a certain class of people. He mentioned Jews, but I couldn't say whether he mentioned colored people or not. When I was ready to sell, I sent for Mr. Henze to see these people, and he only stayed a few minutes because he was late coming from his business, and his wife was waiting for him for supper. He excused himself and went off, but he called Mr. Murphy out in the hall. What they said I don't know, but Mr. Henze didn't come back. Mr. Murphy came back and he said something to Mr. Saunders that I could not say what he said. I heard Mr. Saunders say 'Tell him I am an Irish-Canadian.' I couldn't tell whether that was before or after this was signed."

She also said she saw Mr. Saunders four times and thought he was a white man.

The defendant, Nelson M. Saunders, testified that he was born in Detroit in 1887, and that he has been employed by the Fyfe Shoe Company for approximately 20 years; that he was confirmed in Christ Episcopal church and sang in the Christ church choir;

that at the time the parties met at the home of Mary Beechie:

"What they have termed as the preliminary contract, Exhibit 8, was signed at that time in the home, when the people I mentioned were present, Mr. Henze, Mr. Murphy, Miss Beechie, Mrs. Beechie, Mr. Gilbert, my wife and myself. Up to the time this was signed there was not a word said about our nationality. The first word of nationality was broached after a short conference with Mr. Henze and Mr. Murphy and Miss Beechie. The first question as to race was raised when the parties went out for their conference. After the parties returned, Mr. Henze did not remain, when Mr. Murphy and Miss Beechie returned to the room after their talk with Mr. Henze. Miss Beechie says 'Are you an American?' That was the first question asked. I said 'Yes;' I was born in Detroit, Michigan. The next question was when we were all on the East Grand Boulevard, just opposite the Science church in the automobile. Mr. Murphy turned to me and said, 'Are you Jewish?' I said 'No, not a drop.' We rode on and he said that Mr. Henze—He did make a statement that Mr. Henze is quite strict about that. I said, 'My wife's nose gets me into all this trouble, Mr. Murphy, but you need not worry about that.' He says, 'Even if you are, tell them you are Japanese or Irish. You can tell them you are Irish, anything.' During the whole of the transaction, I did not at any time make any representations than those I have given you here as to race. I answered all the questions directly and as I have stated.

"The only thing asked me directly was whether or not I was Jewish. The question was put to me directly, 'Are you Jewish?' I deny the accusation that I stated in the presence of Mrs. Beechie that I was Irish-Canadian.

"When Mr. Murphy asked me—turned around and asked me if I was Jewish, I told him 'Not a drop.' I said 'My wife's nose gets me into all that trouble.' When I said that trouble I referred to thinking we were Jewish."

The defendant Marjorie Saunders testified that she

was a school teacher; that when she left Mary Beechie's house in the automobile with her husband and Mr. Murphy and Mr. Gilbert they rode as far as the Boulevard with Mr. Murphy, and that Mr. Murphy said:

" 'Mr. Henze was afraid you are Jewish' and Mr. Saunders said 'Not a drop.'   Mr. Murphy said 'Well, if Mr. Henze asks you what you are, tell him you are Irish-Canadian, or anything like that.'   *   *   *

"At Mrs. Beechie's home Mr. Henze was asked to come and see if the transfer would be all right, and he called out Mr. Murphy.   Then they called out Mrs. Beechie, and they had a lengthy conversation.   Finally Mrs. Beechie came in and said 'Are you Americans?' We both said 'Yes, we are.'   Mr. Murphy didn't say when he came back from talking with Mr. Henze before this contract was signed Mr. Henze won't sell to a Jew or to colored people or to anybody but white Americans.   Mr. Murphy said they wouldn't sell to Jewish people, but colored was never brought up in the conversation.   Nothing was said about our color in the house.   Nothing was said about color in the automobile.   It was simply whether we were Jewish. Color was not brought up at any time during this transaction.   Mr. Murphy said Henze would not sell to Jewish.   He didn't say he wouldn't sell to Jewish or anybody but white Americans.   He didn't refer to white or Americans.   My husband didn't tell Mr. Murphy he was an Irish-Canadian.   Mr. Murphy asked if we were Jewish and Mr. Saunders said 'Not a drop.'   The suggestion that we were Irish-Canadians was made by Mr. Murphy.   He said 'Tell Henze you are Irish-Canadians, or anything.' ' "

Mr. Henze, Mary Beechie, Mr. Murphy and Mr. Gilbert all thought Mr. Saunders was a white person, but Mr. Henze suspicioned he was a Jew.   Here we have some reason for the inquiry as to whether he had Jewish blood, but none whatever with reference to colored blood.   Upon a consideration of this record we must find that the plaintiffs have not established.

by a preponderance of the evidence, the fraudulent representations alleged.

It is contended that Mrs. Henze never having given her consent in writing the assignment by Mrs. Beechie to Mr. Saunders is void. We feel that under the evidence relative to the management of the real estate by her husband she is in no position to urge the necessity of her consent.

The decree entered in the circuit is affirmed, with costs to defendants.

STEERE, C. J., and MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.